# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ALLEN MICHAEL McFADDEN, # 562-393, | * |
| Plaintiff | * |
| v | *    Civil Action No. ELH-18-456 |
| OFFICER JOSHUA BAKER,[1] | * |
| Defendant | * |

***

## MEMORANDUM OPINION

On February 14, 2018, self-represented plaintiff Allen McFadden filed a civil rights action against Correctional Officer Joshua Baker, a Maryland Division of Correction employee working at the Roxbury Correctional Institution in Hagerstown ("RCI"). In his unverified complaint (ECF 1), McFadden alleged that Baker pushed him down the stairs while McFadden was handcuffed from behind, causing him to fall and sustain injury to his neck, head, back, right wrist, and left ankle. *Id.* at 2. As relief, McFadden seeks monetary damages of $150,000.00. *Id.* at 3.

Baker has moved to dismiss the claim or, in the alternative, for summary judgment. ECF 14. It is supported by a memorandum of law (ECF 14-1) (collectively, the "Motion") and exhibits. Baker denies that he pushed McFadden, and claims that he exercised due diligence while McFadden was under escort. Baker also claims he is entitled to qualified immunity.

Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Clerk informed McFadden of his right to respond to the Motion, and that failure to file a response in opposition to the Motion could result in dismissal of the Complaint. ECF 15. McFadden did not respond.

---

[1] The Clerk shall amend the docket to reflect Defendant Baker's full name, as noted above.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, Baker's Motion, construed as a motion for summary judgment, shall be GRANTED.

## I. Standard of Review

Baker's Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. ECF 12. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed App'x. 220, 222 (4th Cir. 2016) (per curiam). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[2]

---

[2] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A]

2

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its

---

Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC, supra*, 672 Fed. App'x at 222 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).

opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f))

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id*. (internal citations omitted).

According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that

4

more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods*, 302 F.3d at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. App'x at 638.

McFadden has not requested discovery. Indeed, he did not respond to the Motion. In light of the foregoing, I am satisfied that it is appropriate to address Baker's Motion, which relies on matters outside the pleadings, as a motion for summary judgment.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original); *see Reyes v. Waples Mobile Home Park LP*, ___ F.3d ___, 2018 WL 4344682, at *4 (4th Cir. Sept. 12, 2018).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility."

5

*Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from

6

proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## II. Factual Background

McFadden states that on January 9, 2018, at approximately 11:00 p.m., he was handcuffed behind his back by Baker to be taken to the shower. McFadden claims he was walking by himself when "Baker then shoved/pushed [him] from the top of the stairs and cause[d] [him] to fall all the way down to the bottom." ECF 1 at 2. Further, plaintiff claims that he was "dragged all the way back up the stairs" by Baker, injuring his neck, head, back, right wrist and left ankle. *Id.* And, he claims that he has three witnesses – Marcus Denise, Dustin Wright, and Russell – "who seen everything." *Id.*

Baker presents a different version of events, supported by exhibits.[3] Baker's duties on January 9, 2018, included conducting routine shower escort for prisoners on McFadden's housing tier, which housed prisoners who had been placed in either administrative or disciplinary segregation and who were limited to one hour of out-of-cell activity per day. ECF 14-2, Declaration of Joshua Baker, ¶ 4. On that date, Baker arrived at McFadden's cell at approximately 11:00 p.m. to escort him to the shower, located one floor below his tier. *Id.* Baker handcuffed McFadden's hands behind him at his cell, and then began to escort plaintiff down the tier floor to the showers. *Id.*

Baker escorted McFadden down the tier floor towards the stairs, walking at a forty-five degree angle behind and to the left of McFadden, while holding McFadden's left arm with his right hand. *Id.,* ¶ 5. Another officer was ahead of them, escorting two other prisoners down the

---
[3] The exhibits have been certified as true and accurate.

7

stairs. ECF 14-2, ¶ 5. McFadden was "hollering loudly" towards the other prisoners. *Id.* When plaintiff took his first step down the stairs, he overstepped the first step and the back heel of his foot caught the step. *Id.* McFadden fell backward, sliding down the stairs, causing Baker to lose hold of his left arm. *Id.*[4] McFadden slid down a dozen or so steps, three-fourths of the way down the stairs, and was stopped when his legs slid into those of the escort officer ahead of him. *Id.*

Baker asked McFadden "if he was alright," then used both hands around McFadden's body to pick him up from the stairs and, at McFadden's request, walked him back to the top of the stairs. *Id.* McFadden indicated that he did not want to shower, and that he wanted to return to his cell. *Id.* ¶ 6. Baker replied that they should wait for a sergeant because, following standard procedure, McFadden likely would be escorted to the medical unit for examination. *Id.*[5] This in fact occurred. *Id.* ¶ 8.

Immediately after the incident, McFadden was taken to the RCI medical unit for evaluation. *Id.*; ECF 14-3 at 4. Medical staff observed McFadden walking to the dispensary unassisted, with a steady gait. McFadden denied losing consciousness, but had redness on both wrists, especially the right wrist; redness on the inside of the left ankle and outside of the left neck; and a 2 cm abrasion on the ribs. He had full range of motion in the neck and upper extremities, strong and equal grip, could reposition his arms without grimacing, and could sit and rise in a chair without difficulty. *Id.* McFadden was provided ice and ibuprofen. ECF 14-3 at 4.

---

[4] In addition to his Declaration, Baker submitted a copy of his written statement, provided after the incident, in which he stated that McFadden slipped while handcuffed and fell down the tier steps. ECF 14-3 at 2, ¶ 3. The report specifies that the incident occurred on January 10, 2018. The discrepancy is not material.

[5] Video cameras are not installed in that housing unit; there is no video surveillance footage of the alleged incident. ECF 14-4, ¶ 3.

8

Baker denies pushing or shoving McFadden down the stairs. ECF 14-2, ¶ 9. He also states that he did not "drag" plaintiff back up the stairs after McFadden fell. *Id.*

Shortly after the incident, McFadden provided a written statement. ECF 14-3 at 3. Notably, he indicated that he "was walking to the shower and fell . . . and no one pushed him." *Id.*

McFadden later wrote an Administrative Remedy Procedure ("ARP") complaint, dated January 15, 2018. ECF 14-3 at 5-6. He stated, in relevant part: "I was told I was shoved to the bottom by Officer Baker! I really don't remember [. . .]" *Id.* at 5. The ARP complaint was dismissed pending completion of an Intelligence & Investigative Division ("IID") report. *Id.*[6]

### III. Discussion

McFadden claims his Eighth Amendment right to be free from cruel and unusual punishment was violated when Baker pushed him down the stairs. As there was no need to use any force against McFadden during his escort to the shower, the Court must analyze whether McFadden was subjected to force "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). The extent of injury incurred is one factor indicative of whether the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

Ordinarily, in cases where, as here, a defendant denies there was an application of force, there exists a genuine dispute of material requiring credibility determinations not appropriate for resolution on summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). This is not the case here. McFadden's complaint is unverified, and he does not oppose

---

[6] The IID report is not among the exhibits provided in support of Baker's Motion.

Baker's dispositive motion. In a written statement taken shortly after the incident, McFadden denied that Baker pushed him. Later, in an ARP complaint, he indicated that he did not remember the incident, but that other individuals told him he was pushed. In contrast, Baker's narrative of events consistently details that McFadden's injuries were caused by an accidental misstep and fall. McFadden has not refuted the evidence submitted by Baker.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). The protection conferred by the Eighth Amendment imposes on prison officials an affirmative "obligation to take reasonable measures to guarantee the safety of ... inmates." *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986); *see Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016).

Notably, "[n]ot all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.' " *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319–21 (1986)). In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance. *See Farmer*, 511 U.S. at 834; *Thompson*, 878 F.3d at 97.

The deliberate indifference standard consists of a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97-98

(quoting *Farmer*, 511 U.S. at 834, 837-38). Conversely, in excessive force cases, "courts must determine 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Thompson*, 878 F.3d at 98 (quoting *Hudson v. McMillian*, 503 U.S. 1, at 6-7 (1992)).

A convicted inmate's claim of the use of excessive physical force by an officer is analyzed in the context of the Eighth Amendment's prohibition against cruel and unusual punishment. *See Whitley*, 475 U.S. at 319–21; *see also Hudson*, 503 U.S. at 7–9. An Eighth Amendment analysis asks whether the prison officials "acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). An inmate must meet a heavy burden to satisfy the subjective component—that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm," rather than "in a good-faith effort to maintain or restore discipline." *Whitley*, 475 U.S. at 320–21 (internal quotation marks omitted).

To the extent McFadden's complaint is construed as an Eighth Amendment claim that Baker did not act protect him from falling, McFadden must show that the deprivation of rights was "sufficiently serious" and that Baker had a "sufficiently culpable state of mind" by failing to take steps to ensure McFadden's safety. *Wilson v. Seiter,* 501 U.S. 294, 297-98 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (deliberate indifference requires state of mind more blameworthy than negligence). To establish that Baker's conduct constituted "cruel and unusual punishment" under the Eighth Amendment, that conduct must constitute more than ordinary lack of care for Mcfadden's safety. *Arnold v. South Carolina Dep't of Corr.,* 843 F. Supp. 110, 113 (D. S.C. 1994) (citing *Whitley v. Albers,* 475 U.S. at 319). Mere negligence does not transform

the conduct of prison personnel into a constitutional claim under 42 U.S.C. § 1983 solely because the action was committed under color of state law. *See Thomas v. Zinkel,* 155 F. Supp. 2d 408, 414 (E.D. Pa. 2001) (slip and fall due to dangerous working condition caused by known leaking roof merely negligence).[7]

To the extent that the claim is one of excessive force, there is no evidence that Baker purposely or maliciously pushed plaintiff down the stairs.

Finally, to the extent that McFadden's complaint raises a negligence claim, the Court declines to exercise supplemental jurisdiction. *See Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

## IV. Conclusion

Defendant Baker is entitled to summary judgment in this case. A separate Order shall be entered in accordance with this Memorandum Opinion.

Date: September 20, 2018

/s/
Ellen L. Hollander
United States District Judge

---

[7] In light of the disposition, I need not address Baker's qualified immunity argument.